# Third District Court of Appeal

## State of Florida

Opinion filed June 19, 2024.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D22-2053
Lower Tribunal No. 22-2079
_____

**Donna Fuentes,**
Appellant,

vs.

**Irene C. Link, etc., et al.,**
Appellees.

An Appeal from the Circuit Court for Miami-Dade County, Jose L. Fernandez, Judge.

Waugh PLLC, and Christian W. Waugh (Orlando), for appellant.

Virgil & Rubel LLP, and J. Eric Virgil and Stacy B. Rubel, for appellee Irene C. Link.

Before FERNANDEZ, SCALES and BOKOR, JJ.

BOKOR, J.

This appeal follows a summary final judgment in a quiet title action which disposed of real property owned by Douglas A. Link, who died intestate on July 21, 2020. Donna Fuentes is Douglas's daughter, and Irene Link is Douglas's surviving spouse. Donna alleges that the trial court lacked sufficient evidence to conclude that no genuine issue of material fact existed as to whether Douglas validly conveyed ownership of the property to Irene before his death.

## FACTS AND PROCEDURAL HISTORY

Prior to his death, Douglas executed a document assigning his homestead property in Miami-Dade County to a revocable living trust for the benefit of Irene. This document, the "Revocable Living Trust Agreement," listed Irene as both trustee and beneficiary, providing that Irene would manage the property during Douglas's lifetime and would then distribute ownership of the property to herself upon Douglas's death. Douglas, Irene, and two witnesses signed the document. The document wasn't recorded until after Douglas's death.

During the probate proceedings, Donna petitioned to quiet title to the property, alleging that the trust agreement constituted an invalid conveyance. According to Donna, Douglas owned the property at the time of his death, entitling Donna (who is not Irene's daughter) to a share of the

2

property as an intestate heir.[1] The parties brought cross-motions for summary judgment, and after a non-evidentiary hearing, the trial court found in favor of Irene, relying on this court's decision in Flinn v. Van Devere, 502 So. 2d 454, 456 (Fla. 3d DCA 1986), and entered final summary judgment finding that the trust agreement here effectively functioned as a deed containing all required elements for a valid conveyance. This appeal followed.

**ANALYSIS**

We review a grant of summary judgment de novo. See, e.g., Fla. Bar v. Greene, 926 So. 2d 1195, 1200 (Fla. 2006). Summary judgment is appropriate only when the moving party can demonstrate that there are no genuine issues of material fact and that they are entitled to a judgment as a matter of law. Id.; Fla. R. Civ. P. 1.510. Issues of fact are "genuine" if a reasonable jury could potentially find for the non-moving party, and a factual issue is "material" if it could reasonably affect the outcome of the case under the applicable substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

---

[1] The surviving spouse of a decedent is entitled to one-half of the intestate estate when the decedent is also survived by children that are not also children of the surviving spouse. § 732.102(3), Fla. Stat. The remaining portion of the intestate estate passes to the descendants of the decedent. § 732.103(1), Fla. Stat.

Summary judgment is designed to "test the sufficiency of the evidence to determine if there is sufficient evidence at issue to justify a trial or formal hearing on the issues raised in the pleadings." Greene, 926 So. 2d at 1200. The movant must demonstrate that the non-movant has "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); In re Amends. to Fla. Rule of Civ. Proc. 1.510, 309 So. 3d 192, 194 (Fla. 2020) (adopting the federal summary judgment standard articulated in Celotex and Matsushita as the standard for summary judgments in Florida, effective May 1, 2021).

In Florida, real property may be conveyed only by a deed executed in the presence of two witnesses. See, e.g., Walker v. City of Jacksonville, 360 So. 2d 52, 53 (Fla. 1st DCA 1978); § 689.01(1), Fla. Stat. ("No estate or interest of freehold . . . shall be created, made, granted, transferred, or released in any manner other than by instrument in writing, signed in the presence of two subscribing witnesses . . . unless by will and testament, or other testamentary appointment, duly made according to law . . . ."). The trial court correctly noted that there are no other strict form requirements for a

4

deed, nor is there any requirement that the document be labeled a "deed." See Saltzman v. Ahern, 306 So. 2d 537, 539 (Fla. 1st DCA 1975) ("Technical words of grant or conveyance are not essential in order for a deed to operate as a conveyance."); see also Flinn, 502 So. 2d at 455 (suggesting that trust documents can be "regarded" as a deed if they "comply with the necessary formalities of two witnesses and an adequate legal description" and contain an "expression which purports to convey, grant or transfer the real estate").

However, irrespective of intent, "[a] deed is essentially worthless as an instrument of title without delivery, even if delivery may have been intended but failed due to an accident." Sargent v. Baxter, 673 So. 2d 979, 980 (Fla. 4th DCA 1996) (noting also that "[a] grantor's recording of a deed, in the absence of fraud on the grantor, is generally presumed equivalent to delivery"). "Whether a deed has been delivered and is therefore effective to transfer ownership of real property to the grantee depends on the intent of the grantor," and "[a] decision regarding the intent of the grantor of a deed is one of fact." James v. Mabie, 819 So. 2d 795, 797 (Fla. 1st DCA 2002) (citations omitted).

Here, the parties agree that the trust agreement wasn't recorded during Douglas's lifetime, but the record contains sufficient, unrebutted evidence of

intent to convey, conveyance, and delivery. Specifically, the trust instrument contains the following:

> 1. ***Transfer of Property***: Grantor, in consideration of the acceptance by trustee of the trust herein created, hereby coneys, transfers, assigns, and delivers to trustee, his/her successors in trust and assigns, the property described in Exhibit A attached hereto and made a part thereof, by this reference, which property, held by trustee hereunder, is herein referred to as Trust Estate. Grantor, and any other persons shall have the right at any time to add property acceptable to trustee to this trust and such property, when received and accepted by trustee, shall become a part of the trust estate.

Additionally, "Irene C. Morris" is named as trustee and signed in acceptance and execution of this agreement, along with the presence of two witnesses. Further, the trust also designates to Irene as the trustee (who is also designated as the beneficiary of the trust), the obligation to "care for and manage the trust estate and collect the income derived therefrom" and after payment of taxes, assessments, and expenses, at the request of the grantor, the obligation to pay any leftover income to the grantor or whomever he may direct, but upon the grantor's death the property goes to the beneficiary—Irene.

The fact that the agreement purports to be revocable, alone, doesn't create an issue of fact. Here, the trust instrument contained whereas clauses, incorporated into the agreement, that explicitly set forth that the intent was to collect income from the property during his life, and take care

6

of "the disposition of both such income and such property in the manner provided herein provided." That is, get the money while he was alive and convey the property to Irene upon his death. The trust was never amended and was recorded upon Douglas's death.  Donna offers only the fact that the trust instrument was revocable and unrecorded during Douglas's life to suggest that there's an issue of fact regarding intent.  But that, without more, can't be right.  Most revocable trusts aren't revoked, but of course some are, and neither unremarkable proposition speaks to Douglas's intent. At best, the fact that the trust is revocable and unrecorded creates a "merely colorable" argument, but one which "is not significantly probative" of intent. In re Amends., 309 So. 3d at 193 (explaining that nonmovant must present more than mere colorable, non-probative conjecture to defeat summary judgment) (quoting Anderson, 477 U.S. at 249–50).

Based on the evidence contained in the summary judgment record, the trial court correctly found no issue of material fact relating to intent, conveyance, or delivery, and correctly entered summary judgment.  See, e.g., Brevard County. v. Ramsey, 658 So. 2d 1190, 1194 (Fla. 5th DCA 1995) (explaining that "a trust is created by a transfer of property inter vivos or by will by the owner of the property to another as trustee," and noting that "[t]he transfer of title to a trustee is the event that brings the trust into existence"

7

provided that "[if] a settlor attempts to transfer real property to a trustee, the requirements of section 689.06 apply"); see also William Kalish, The Florida Bar, Administration of Trusts in Florida, § 14.4.C. (11th ed. 2022) ("There is no prohibition on a trust acting as a document of conveyance.") cf. Koppenhoefer v. Roberts, 654 So. 2d 204, 204 (Fla. 4th DCA 1995) (reversing summary judgment in favor of grantee due to genuine issues of fact as to grantor's intent to convey the property under deed that grantor recorded, but retained possession of since execution); Howarth v. Moreau, 430 So. 2d 576, 578 (Fla. 5th DCA 1983) (reversing and remanding directed verdict finding delivery of deed where "there is no evidence in the record from which the jury could have concluded there was unconditional delivery of the deed").

Affirmed.